DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GUSTAVO RAMIREZ-LUCAS**, deceased, by and through **CINDY
KRAMER** and **NORMA RAMIREZ**, co-personal representatives of the
**ESTATE OF GUSTAVO RAMIREZ-LUCAS**,
Appellants,

v.

**JOHN HUTCHINSON** and **ANDREW HUTCHINSON**,
Appellees.

No. 4D18-2109

[August 14, 2019]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm
Beach County; Edward A. Garrison, Judge; L.T. Case No. 2015CA007967.

Blair M. Dickert and Lee Gill Cohen of Kanner & Pintaluga, P.A., Boca
Raton, for appellants.

Hinda Klein of Conroy Simberg, Hollywood, for appellees.

DAMOORGIAN, J.

Plaintiffs, Cindy Kramer and Norma Ramirez, as Co-Personal
Representatives of the Estate of Gustavo Ramirez-Lucas, appeal the final
judgment entered in favor of John Hutchison on the issue of vicarious
liability. For the reasons discussed below, we affirm.

**Background**

On May 19, 2015, a vehicle driven by Andrew Hutchinson ("the Son")
collided with a bicycle operated by Gustavo Ramirez-Lucas
("the Decedent"). As a result of the collision, the Decedent suffered serious
injuries which ultimately resulted in his death. Plaintiffs thereafter sued
the Son for negligence along with his father, John Hutchinson
("the Father") (collectively "Defendants"), for the Son's negligence under
the dangerous instrumentality doctrine. Specifically, the complaint
alleged that the Father owned the vehicle driven by the Son that was
involved in the accident. Defendants answered the complaint and denied
the material allegations, including the Father's ownership of the vehicle.

The issue of whether the Father transferred his ownership interest in the vehicle prior to the accident proceeded to a bench trial where the following was established by testimonial and documentary evidence.

In December 2014, approximately five months prior to the accident, the Father delivered physical possession of the vehicle to the adult Son along with both keys, the manual, and the registration. That same day, the Father also provided the Son with the signed certificate of title. From December 2014 until the time of the accident, the vehicle remained at the Son's residence and the Son maintained sole possession, control, and use of the vehicle. The Son also paid all associated costs of the vehicle. The Father, who did not reside with the Son, did not operate or exercise dominion over the vehicle at any point after physical possession of the vehicle was transferred to the Son.

Defendants initially agreed that the Son would pay $2,500 for the vehicle, however, payment was delayed until end of January 2015. Defendants later decided to formally document the sale by belatedly executing a bill of sale agreement on April 1, 2015. The bill of sale agreement, which was admitted into evidence, listed the Father as the seller, the Son as the buyer, and the purchase price as $2,500.

Around the same time that he received payment from the Son, the Father sent a letter to his insurance carrier requesting that the vehicle be removed from his policy because he "no longer own[ed] the vehicle." The Father's insurance carrier later confirmed in writing that, as of February 2, 2015, the vehicle was removed from the Father's policy. That same month, the Son added the vehicle to his own insurance policy.

At no time prior to the accident did the Father notify the DMV of the sale or transfer of the vehicle as required under section 319.22, Florida Statutes. Nor did the Son deliver the certificate of title to the DMV to complete the transfer of title prior to the accident.

Based on the above evidence, the trial court found that the Father transferred his ownership interest in the vehicle prior to the accident and was therefore not subject to vicarious liability for the Son's alleged negligent driving. Specifically, the court found that the Father's act of delivering physical possession of the vehicle, along with the keys, the owner's manual, and the endorsed certificate of title, constituted a bona fide transfer of ownership notwithstanding the Son's failure to complete the necessary paperwork prior to the accident.

2

## Analysis

On appeal, Plaintiffs challenge the trial court's finding of no vicarious liability by the Father. Plaintiffs reason that the Father remained the legal owner of the vehicle at the time of the accident because he failed to timely notify the DMV of the purported sale and transfer of the vehicle as required by section 319.22, Florida Statutes. According to Plaintiffs, compliance with the statute is the only way to avoid civil liability. Alternatively, Plaintiffs argue that the trial court applied the wrong "subjective intent" standard in determining the issue of liability.

The Father counters that Plaintiffs' reliance on section 319.22 is misplaced because compliance with the statute is not the sole litmus test for determining ownership and, in turn, the existence of vicarious liability. Rather, vicarious liability may be avoided where, as in the instant case, there is objective evidence demonstrating that the titleholder transferred his or her entire interest in the vehicle and only held "naked legal title" under a faulty incomplete transfer. Under such a scenario, beneficial ownership of the vehicle is transferred to the buyer and the titleholder is relieved of liability. We agree with the Father.

### *1. Compliance with Section 319.22, Florida Statutes*

Section 319.22, Florida Statutes, provides that an owner who has made a bona fide sale or transfer of a motor vehicle and delivered possession thereof to a purchaser shall not be deemed the owner of the vehicle so as to be subject to civil liability if either of the following requirements are met:

> 1. When such owner or coowner has made proper endorsement and delivery of the certificate of title as provided by this chapter.
>
> . . . .
>
> 2. When such owner or coowner has delivered to the department, or placed in the United States mail, addressed to the department, either the certificate of title properly endorsed or a notice in the form prescribed by the department.

§ 319.22(2)(a), Fla. Stat. (2015).

In 2009, the statute was amended and the following relevant provision was added:

> An owner or coowner who has made a bona fide sale or transfer of a motor vehicle and has delivered possession thereof to a purchaser shall notify the department within 30 days after the sale or transfer in the form prescribed by the department. Notice by such owner or coowner under this paragraph shall satisfy the notice requirement under subparagraph (a)2. for limitation of liability under paragraph (a).

§ 319.22(2)(b), Fla. Stat.

Although section 319.22 makes clear that no civil liability can accrue to a seller of a motor vehicle who complies with the requirements of the statute, Florida courts analyzing the statute have consistently held that "it does not necessarily follow that a seller who does not comply with these requirements is ipso facto liable." *Palmer v. R.S. Evans, Jacksonville, Inc.*, 81 So. 2d 635, 636 (Fla. 1955); *accord McAfee v. Killingsworth*, 98 So. 2d 738, 740 (Fla. 1957). The reason being that "the common law of sales is available to test the liability of a non-complying seller." *Palmer*, 81 So. 2d at 636.

Under the common law, liability may be imposed on an owner who gives authority to another to operate the owner's vehicle under the dangerous instrumentality doctrine. *Christensen v. Bowen*, 140 So. 3d 498, 501 (Fla. 2014). "The underlying rationale of the doctrine is that if a vehicle owner, who has control over the use of the vehicle, exercises his or her control by granting custody of the vehicle to another, the owner commits himself or herself to the judgment of that driver and accepts the potential liability for his or her torts." *Id.* The dangerous instrumentality doctrine, however, has a narrow exception: the beneficial ownership exception. *Id.* Under the beneficial ownership exception, also known as the "bare legal title" exception, "a titleholder may avoid vicarious liability if the titleholder demonstrates that he or she does not have the authority to exert any dominion or control over the vehicle and therefore is not a beneficial owner of the vehicle." *Id.*

The holding in *Plattenburg v. Dykes*, 798 So. 2d 915 (Fla. 1st DCA 2001) is instructive. In that case, the titleholder told an individual that he could have the vehicle if he removed it from the titleholder's driveway. *Id.* at 916. In preparation for the transfer of possession, the titleholder left the keys, the owner's manual, the certificate of title, and the registration in the vehicle. *Id.* Immediately after the individual took possession of the vehicle and removed it from the driveway, the titleholder cancelled the insurance on the vehicle. *Id.* A few days later, the individual was involved in an

4

accident while driving the subject vehicle. *Id.* At the time of the accident, the titleholder had not signed the vehicle title over to the individual. *Id.* In holding that the trial court properly entered summary judgment in favor of the titleholder, the appellate court explained:

> Here, the undisputed facts of record show a gift from [the titleholder] to [the individual]. [The titleholder's] act of cancelling the automobile insurance is completely consistent with such a conclusion. The record bears out that [the individual] simply had not yet followed through with completing the paperwork for the transfer of title. Accordingly, the trial court correctly ruled that the gift was complete, and that [the titleholder's] failure to complete the transfer of title could not, standing alone, support a finding of vicarious liability.

*Id.* at 916–17; *see also McAfee*, 98 So. 2d at 739–40 (holding similarly).

Plaintiffs nonetheless maintain that the above cases are no longer applicable because they either did not analyze the statute or analyzed older versions of the statute—pre-2009 amendment versions which did not include the requirement that an owner notify the DMV within 30 days after the sale or transfer of a motor vehicle. Essentially, Plaintiffs are arguing that the 2009 amendment abrogated the common law and did away with the beneficial ownership exception to the dangerous instrumentality doctrine. We disagree for several reasons.

First, section 319.22 "has been construed by this court as affecting the marketability of title, not the mere transfer or passage of title." *Bunting v. Daly's, Inc.*, 528 So. 2d 106, 107 (Fla. 4th DCA 1988). This remains true with the version of the statute applicable in this case. *See* § 319.22(1), Fla. Stat. (2015) (providing that a person "shall not acquire *marketable* title" without complying with the statute (emphasis added)).

Second, there is no express language in the post-2009 version of the statute indicating that the legislature intended to abrogate the common law of sales. *See Kitchen v. K-Mart Corp.*, 697 So. 2d 1200, 1207 (Fla. 1997) ("Under our rules of statutory construction, a statute will not displace the common law unless the legislature expressly indicates an intention to do so."). Rather, the 2009 amendment merely added an additional requirement for compliance with the statute. Importantly, the amendment left intact the relevant portion of the statute discussing civil liability—the very language that the pre-2009 amendment cases analyzed.

5

Third, in 2014, our supreme court recognized the continuing applicability of the beneficial ownership exception in *Christensen*. In that case, the facts of which will be discussed more thoroughly below, the co-owner of a vehicle sought to avoid vicarious liability under the beneficial owner exception to the dangerous instrumentality doctrine by asserting that he never intended to be the owner of the vehicle and further claiming that he relinquished control of the vehicle to the other co-owner with whom he did not reside. 140 So. 3d at 500. It is undisputed that the co-owner took no steps to transfer his ownership in the vehicle pursuant to section 319.22 prior to the accident. *Id.* at 506. Rather than simply hold that the co-owner was subject to vicarious liability for failure to comply with the statute, which the court would have been required to do if compliance with the statute was the only way to defeat vicarious liability, the court proceeded to analyze the issue under the beneficial ownership exception. *Id.* at 501–06.

### 2. Applicability of the Beneficial Ownership Exception

Alternatively, Plaintiffs argue that the beneficial ownership exception to the dangerous instrumentality doctrine does not apply in this case because the record evidence merely shows that the Father subjectively intended to transfer ownership of the vehicle to the Son. Such a subjective intent is insufficient to defeat vicarious liability pursuant to *Christensen*.

The relevant facts in *Christensen* are as follows. In 2003, husband purchased a vehicle and the certificate of title was placed in both his and his then wife's name as co-owners. 140 So. 3d at 500. The parties eventually divorced, and wife kept physical possession of the vehicle at her new residence. *Id.* Husband did not have a key to the vehicle or use of the vehicle and did not have access to wife's garage where the vehicle was kept. *Id.* While driving the subject vehicle, wife negligently struck and killed an individual. *Id.* At the time of the accident, title to the vehicle remained in both husband and wife's name. *Id.* The executor of the decedent's estate accordingly filed a wrongful death action against both husband and wife, alleging that husband, as an owner of the subject vehicle, was vicariously liable for wife's negligence under the dangerous instrumentality doctrine. *Id.* Husband contended that he was not vicariously liable under the beneficial ownership exception, testifying at trial that "his intent was to purchase the vehicle as a gift for his wife and that he had no involvement with the vehicle after it was purchased." *Id.* The jury ultimately found that husband was not the owner of the vehicle and the district court reversed, holding that husband's subjective intent was insufficient to defeat vicarious liability. *Id.* at 500–01.

6

In affirming the district court's decision, our supreme court held that:

> [B]eneficial ownership is unrelated to physical access to a vehicle, past use of a vehicle, or intent to use or not use a vehicle. Rather, beneficial ownership arises from legal rights that allow an individual to exert some dominion and control over the use of the vehicle. Thus, because a titleholder has legal rights in the vehicle and is in a position to exert some dominion and control over the vehicle, he or she is a beneficial owner. The injection of theories of subjective intent would destabilize the law with regard to motor vehicles in Florida.

*Id.* at 504. As husband presented no evidence showing that he took objective steps to transfer his co-ownership interest in the vehicle, husband remained a beneficial owner regardless of his subjective intent to gift the vehicle to wife or his non-use of the vehicle. *Id.* at 506.

Importantly, the court also expressly approved of the holdings in the pre-2009 amendment cases, including *Palmer*, *McAfee*, and *Plattenburg*, and reaffirmed that a titleholder who holds "naked legal title" under a faulty incomplete transfer will not be subject to vicarious liability. *Id.* at 502–05. The court explained that "[i]n such cases, the underlying rationale of the dangerous instrumentality doctrine—that the titleholder has committed himself or herself to the driver's judgment—does not apply." *Id.* at 503. In other words, although physical access to a vehicle or intent to use or not use a vehicle is insufficient, standing alone, to defeat vicarious liability, the presence of clear and unequivocal evidence showing that the titleholder took objective steps to transfer his or her interest in the vehicle and held mere "naked legal title" under a faulty incomplete transfer is sufficient to defeat vicarious liability. *See id.* at 504–05.

In the present case, the clear and unequivocal evidence established that the Father transferred his beneficial ownership interest in the vehicle prior to the accident and merely held "naked legal title" under a faulty incomplete transfer. Specifically, the evidence established that the Father took the following objective steps to transfer his ownership interest in the vehicle prior to the accident: (1) sold the vehicle to the Son for $2,500 as evidenced by the bill of sale; (2) delivered physical possession of the vehicle to the Son, along with the keys, the owner's manual, and the endorsed certificate of title; and (3) cancelled the insurance on the vehicle as evidenced by the confirmation letter from the Father's insurance carrier. Pursuant to *Christensen* and the precedent cited therein, this objective evidence was more than sufficient to defeat vicarious liability despite the Father's failure to comply with section 319.22, Florida Statutes.

7

*Affirmed.*

FORST, J., and CROOM, JANET C., Associate Judge, concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**